IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DENNIS M. BROWN            )
                           )   No. 3:14-1451
v.                         )   Judge Trauger/Bryant
                           )
SOCIAL SECURITY ADMINISTRATION )

To:    The Honorable Aleta A. Trauger, District Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration") denying plaintiff's application for Supplemental Security Income (SSI) benefits, as provided under Title XVI of the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 16), to which defendant has responded (Docket Entry No. 17). Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 13),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED and that the decision of the SSA be AFFIRMED.

## I. Introduction

Plaintiff protectively filed his application for SSI benefits on February 3, 2011, alleging disability beginning January 1, 2010, due to asthma, a ruptured disc in his back, and

---

[1]Referenced hereinafter by page number(s) following the abbreviation "Tr."

high blood pressure. (Tr. 115, 134) Plaintiff subsequently amended his alleged onset date to conform with his protective filing date, consistent with Title XVI of the Social Security Act. His application was denied at the initial and reconsideration stages of agency review, whereupon he requested *de novo* review of his claim by an Administrative Law Judge (ALJ). The ALJ hearing was held on January 3, 2013, and plaintiff appeared with counsel and gave testimony. (Tr. 36-54) Testimony was also received from an impartial vocational expert. At the conclusion of the hearing, the ALJ took the matter under advisement until February 8, 2013, when she issued a written decision in which she concluded that plaintiff was not disabled. (Tr. 15-21) That decision contains the following enumerated findings:

1. The claimant has not engaged in substantial gainful activity since February 3, 2011, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairment: asthma (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: avoidance of concentrated exposure to pulmonary irritants and temperature extremes.

5. The claimant is capable of performing past relevant work as a forklift operator. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6. The claimant has not been under a disability, as defined in the Social Security Act, since February 3, 2011, the date the application was filed (20 CFR 416.920(f)).

7. The claimant's subjective complaints, including pain, have been evaluated as required under the applicable regulations and rulings.

(Tr. 17-18, 20)

On May 8, 2014, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-3), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

The following review of the medical and testimonial record is taken from pages 4-6 of the ALJ's decision (Tr. 18-20):

The claimant has received limited follow up since the amended onset date, mostly through the United Neighborhood Clinic. He requested medication refills in February 2011, including Tylenol for back pain, an inhaler for asthma, and a B12 shot. He reported no gastrointestinal problems. He had a history of alcoholism, and still had one to two beers a week, twice a week. Family Nurse Practitioner Rivers said it was unclear if he was reliable. Physical examination, including respiratory examination, was normal. Assessment was backache, asthma, and nutritional anemia. Exhibit IF. In March 2011, he reported that Qvar helped his respiratory symptoms, but he was not using Albuterol daily. Liver enzymes were elevated, but he denied any history of hepatitis. He was drinking a 12 pack of beer weekly. He had no symptoms. Examination was normal. His asthma was described as mild and intermittent throughout the record. In April and August 2011, he was noted to have some mild wheezing, and a hacking cough in April 2011. Lungs were clear on examinations in November 2011, May 2012, June 2012, and July 2012, although he continued to smoke one half pack of cigarettes a day. He was advised to stop smoking in July 2012 and August 2012. Dr. West first examined the claimant in August 2012, and implored the claimant to stop smoking, but "pt [sic] 'not ready yet.'" He was seen in September 2012, when he had been out of blood pressure medications for one week. Poor control historically was reported. He had bilateral diffuse decreased breath sounds, according to Dr. West. He also had mild wheezing in October 2012. He requested a pain pill although he could not remember its name, in November 2012. He was scheduled to undergo a screening colonoscopy the next day, but had not attended the pre-operative screening the day of the examination and had not undergone the appropriate preparation for the test. It was postponed. Exhibit 6F. Pulmonary function studies

3

conducted in August 2012 were indicative of severe obstruction, but no restriction. In October 2012, he tested positive for hepatitis B. He also reported that he was drinking 48 ounces of beer weekly and smoking. Exhibit 5F. In December 2012, Dr. West completed an assessment of the claimant's ability to work, finding that he could lift and carry less than [ten pounds], stand and walk less than two hours, sit less than two hours, with changing positions every five minutes, would need to lie down four to six times a day, could perform postural activities occasionally except no crouching or climbing ladders, with limited pushing and pulling, and avoidance of all environmental factors. Exhibit 7F. No weight is given this assessment because it is entirely unsupported by the clinic records or any other medical evidence in the record. In addition, at the time, Dr. West had examined the claimant on only three occasions, and could not be considered a treating source, because of her limited treatment of the claimant.

He had a limited consultative examination conducted by Dr. Hall in March 2011. At that time, the claimant reported back pain due to a ruptured disk dating back to 1994 or 1995, with his only treatment while incarcerated. He did not mention asthma or any other complaint. He smelled of smoke. Dr. Hall noted that the claimant appeared well. He was in no acute distress, well developed, with normal gait and station. He had no difficulty getting out of a chair, or on and off the examination table. Grip strength was 100 pounds on the right and 70 pounds on the left. All grip and manipulation were normal. He was 68 inches tall and weighed 193 pounds. Blood pressure was 136/89. Corrected visual acuity was 20/40 on the right and 20/50 on the left with glasses prescribed in 2007. He had normal range of motion of the cervical and lumbar spine. He had normal strength, reflexes, and pulses of the lower extremities. Lungs were clear. Because of the limited nature of the examination, Dr. Hall did not assess the claimant's ability to work. Exhibit 2F.

The claimant testified at the hearing that he lives with his girlfriend. Although he dropped out of school after the tenth grade, he did obtain a GED. He no longer drives. He last worked in 2011, when his job got slow and he found out he had asthma. He stated that he could not work because of his asthma, knees and back. He said that his doctor told him that he likely had arthritis in his knees (nowhere mentioned in the medical evidence during the pertinent period). The pain comes and goes when he kneels. If he stretched his legs, the pain would go away. He reported that he had a ruptured disk, and he cannot straighten up or walk well (nowhere mentioned in the medical evidence during the pertinent period). The pain came and went; he took pain medication and muscle relaxers. He used an inhaler for asthma, and Qvar twice daily. He took medication for hypertension. He reported that he cannot walk up a flight of stairs without stopping and hot weather bothers him. He was able to walk to the hearing office from the bus stop, but needed to use his inhaler. He reported no side effects to medication, except for drowsiness from Qvar. He did admit that the inhaler helped his symptoms. He replied that he could only sit for five minutes because of back pain, stand and walk ten minutes, and lift five to ten pounds. Activities of daily living included helping with housework, including cleaning the bathroom with bleach and Pine Sol, cooking food such as fried chicken, pork chops, and roasts, but he reported that he sat down while food was cooking. He watched television and attended church, when he was able to get van transportation. He spent most of the day lying down or sitting on the porch. He reported lying down three to four times a day because of back pain. He reported that he had seen Dr. West for a

year, since she took over for another doctor (but the medical reports do not show any visits with Dr. West prior to August 2012). The claimant also reported that he had been diagnosed with hepatitis C, for which he was taking pills (although treatment records do not show any treatment for hepatitis and testing was positive for hepatitis B rather than C). He stated that when pain came on him, he just wanted to lie down and take his medications. He reported he could not concentrate when he was in pain. He reported fatigue at times.

In the function report at exhibit 4E, the claimant reported that he could not breathe or lift anything. He could not walk or climb stairs without getting short of breath. He also had a bad back and high blood pressure. Activities of daily living included walking and watching television. He was able to perform personal care activities, but had to stop at times when doing his hair or shaving. He prepared fried chicken and other meals three times a week. He cleaned house and did the laundry. He got around by walking, taking public transportation, or riding in the car. He shopped for food once a month. He could pay bills and count change. He had no change in his hobbies since the alleged onset date, watching television. He went to church on Sunday at times. He could walk 10-15 minutes and then rested 20 minutes. He had no problems following instructions, getting along with authority, and had never been fired. He could tolerate some stress and changes in routine.

The state agency physicians found no "severe" impairments, causing no significant limitations of function. Exhibits 3F and 4F. That conclusion was reasonable, given the medical evidence at the time they reached their conclusions. The more recent medical evidence does support the pulmonary limitations given above. As noted in the prior section, no weight is accorded the opinion of Dr. West, given her limited treatment and the lack of supporting evidence for her limitations.

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r

of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the record contains substantial evidence that could have supported an opposite conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. E.g., Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). Accordingly, while this court considers the record as a whole in determining whether the SSA's decision is substantially supported, it may not review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. See Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.));

see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

### C. Plaintiff's Statement of Errors

Plaintiff first argues that the ALJ erred in rejecting the opinion of her treating physician, Dr. Jule J. West. (Tr. 32-33) However, the ALJ properly noted that Dr. West, having examined plaintiff on only three occasions prior to rendering her assessment of plaintiff's work-related limitations, cannot be considered a treating source under the regulations (Tr. 18). See Daniels v. Comm'r of Soc. Sec., 152 Fed. Appx. 485, 490-91 (6th Cir. Oct. 24, 2005). Rather, the assessment of Dr. West is only entitled to such priority as is warranted by her status as an examining source. Even so, the ALJ found that the three treatment notes (Tr. 293-96, 300-03, 308-09) did not provide any support for the severe functional limitations indicated in Dr. West's assessment, as they contained notations of, e.g., mild wheezing, diffuse decreased breath sounds, and indications of poor compliance with treatment recommendations and prescriptions, while also reflecting no abnormality in strength, range of motion, gait, or the ability to sit, stand, or walk. (Tr. 18) Moreover, Dr. West prescribed only ibuprofen to treat plaintiff's pain from his diagnosed "backache NOS (not otherwise specified)." (Tr. 309) This inconsistency between a physician's opinion and the

8

treatment notes upon which that opinion is based, as well as with the balance of the medical record, is sufficient reason to discount the weight of an examining source. E.g., Gant v. Comm'r of Soc. Sec., 372 Fed. Appx. 582, 584 (6th Cir. Apr. 7, 2010). The undersigned finds no error here. While plaintiff further argues that, having discounted the weight of Dr. West's assessment, the ALJ had a duty to explicitly weigh the medical opinion evidence that informed her RFC finding but failed to do so here, the undersigned finds no such failure. The ALJ discussed the limited consultative examination performed by Dr. Hall and the finding by the nonexamining state agency physicians that plaintiff had no severe impairment, noting that these findings were supported by the medical record as it existed at the time, but that the more recent medical evidence supported the existence of "severe" asthma and resulting pulmonary restrictions. (Tr. 19-20) This weighing of the medical evidence is substantially supported.

    Plaintiff next argues that the ALJ erred in failing to sufficiently explain why a number of his diagnosed impairments were not found to be severe. Plaintiff states that a number of physical impairments were "diagnosed and well-documented in the record" (Docket Entry No. 16-1 at 8), but fails to refer to any such documentation other than the records related to plaintiff's treatment for back pain. (Tr. 211) The ALJ gave ample reasons for finding plaintiff's back pain to be nonsevere:

> He also complained of back pain, with a very limited treatment history. Diagnosis through the United Neighborhood Clinic was only a backache, and he only complained of back pain on three occasions since the amended onset date. There is no objective evidence of any back impairment: no x-rays or other diagnostic tests. He had full range of

9

motion of the back on consultative examination. He told consultative examiner Hall that he had not had any treatment for back pain since he was in the penitentiary. Accordingly, there is no evidence of any limitation of function arising from a medically determinable back impairment. It is not "severe" as defined under the regulations.

(Tr. 17) As to the remaining impairments mentioned in plaintiff's brief, the Sixth Circuit has observed that the mere diagnosis of an impairment says nothing about its severity. Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988). Having identified plaintiff's severe impairment of asthma and proceeded past the severity step to consider the combined effect of all of plaintiff's impairments after the alleged onset date, the ALJ's failure to discuss each diagnosed impairment and her reasons for deeming them nonsevere cannot be reversible error. See Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987).

Finally, plaintiff argues that the ALJ erred in failing to include a function-by-function assessment in her RFC finding, as required by Social Security Ruling 96-8p. The Sixth Circuit has examined the requirement that a function-by-function assessment inform the RFC determination, finding as follows:

> In *Bencivengo [v. Comm'r of Soc. Sec.*, 251 F.3d 153 (table), No. 00-1995 (3d Cir. Dec. 19, 2000)], the Third Circuit stated, "Although a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing." *Bencivengo,* slip op. at 4. The Third Circuit distinguished between what an ALJ must consider and what an ALJ must discuss in a written opinion. The ALJ need not decide or discuss uncontested issues, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Bencivengo,* slip op. at 5.

Delgado v. Comm'r of Soc. Sec., 30 F. App'x 542, 547-48 (6th Cir. Mar. 4, 2002). Here, the ALJ articulated just how the record evidence supports the determination that plaintiff could perform work at any exertional level so long as he can avoid concentrated exposure to pulmonary irritants and temperature extremes. (Tr. 18-20) In light of the substantially supported finding of no severe exertional impairment, there was no need for the ALJ to articulate any assessment of each particular exertional function based on plaintiff's subjective report of symptoms. The undersigned finds no error here.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED, and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 31st day of August, 2015.

                                       s/ John S. Bryant
                                       JOHN S. BRYANT
                                       UNITED STATES MAGISTRATE JUDGE